UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RED STAR CONSTRUCTION GROUP,
LLC,

              Plaintiff/Counter-Defendant          Case No. 2:23-cv-12341

v.                                    Honorable Susan K. DeClercq
                                          United States District Judge

ODIN PROPERTIES, LLC,

              Defendant/Counter-Claimant.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 42), AND DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 43)**

In this case, Plaintiff Red Star Construction Group, LLC ("Red Star") and Defendant Odin Properties, LLC ("Odin")[1] entered into construction agreements in which Odin hired Red Star to complete work at Odin's apartment complexes in Michigan, Illinois, and Ohio. Despite having express contractual agreements, Red Star argues that Odin stopped paying Red Star's invoices for completed projects, while Odin argues that it paid Red Star for completed work, but not for incomplete or improper work. Red Star sued Odin for breach of contract, unjust enrichment, and

---

[1] For purposes of this Opinion and Order, the designation of Counter-Claimant and Counter-Defendant will be omitted and parties will be referred to only as Plaintiff and Defendant.

quantum meruit. Odin filed a counterclaim for breach of contract, negligence and unjust enrichment. Both parties now move for summary judgment.

## I. BACKGROUND

Plaintiff Red Star was a commercial renovation company "in the business of supplying construction materials and services for residential properties" that operated from 2019 to 2022. ECF No. 42 at PageID.280; ECF No. 42-17 at PageID.474. Aside from briefly having an electrician on staff, ECF No. 42-2 at PageID.318, the owner and sole member of Red Star was Darko Martinovski. ECF No. 4 at PageID.53. Martinvoski managed the construction projects and hired both unionized and non-unionized workers to perform the work. ECF No. 42-2 at PageID.316–17. Defendant Odin is a property-management company that owns or manages real estate across the United States. *Id.* at PageID.55; ECF No. 43 at PageID.519.

Beginning in January 2020, Odin contracted with Red Star to complete several construction projects at Odin's Cornerstone Apartments property ("Cornerstone") in Detroit, Michigan. ECF No. 42 at PageID.283; ECF No. 43 at PageID.419. These projects included renovating porches and apartment interiors; painting walls; replacing flooring; and installing lighting, security cameras, and fencing. *See* ECF Nos. 42-5; 42-6; 42-8. Later, the parties contracted for work at additional properties: Windcrest Apartments in Illinois ("Windcrest") and Mayfair Village Apartments in

Ohio ("Mayfair"). ECF No. 42-2 at PageID.340, 343.

The parties agreed to create individual contracts for each project instead of one overarching contract. ECF No. 42-2 at PageID.338, 356. Red Star agreed to submit project proposals to Odin's director at the time, Shaun Pudles. ECF No. 42-2 at PageID.327–28, 336; *see also* ECF Nos 42-5; 42-6; 42-8. Red Star later sent project proposals to the new director, Aaron Dodsworth, beginning in March 2020. ECF No. 42-2 at PageID.331, 336. According to Martinovski, Odin's manager, Philip Balderson, gave Pudles, and later, Dodsworth, the authority to approve and award the contracts. *Id.*

After Odin approved the project proposals, Red Star would then submit to Odin individual invoices for completed work pertaining to the approved project proposals ("APP Contracts"). ECF No. 42-2 at PageID.338, 356. Odin's third-party processor, AvidXChange, would pay Red Star's invoices, and Odin would reimburse AvidXChange. *Id.*; ECF No. 42-3. The terms of the invoices stated that payment was "due upon receipt," *see* ECF No. 4-1; but according to Red Star, the parties agreed that paying within five days of the invoice's submission was sufficient. *See* ECF No. 42-16 at PageID.458. In January 2020, Red Star began submitting invoices for work at Cornerstone, and later for work at Windcrest and Mayfair Village. ECF No. 42-2 at PageID.340, 343.

In April 2020, Odin and Red Star entered an APP Contract to renovate

- 3 -

Cornerstone's "burnt out units" on Brace Street that were damaged by a fire. ECF No. 42-9; ECF No. 4-1. at PageID.82, 92; ECF No. 42-2 at PageID.349. The project proposal[2] included $61,750.00 for materials and work that included removing loose debris, and $18,750.00 to "rehab the other units up to rental readiness at this address." ECF No. 42-9. The proposal's terms stated that Odin would pay 35% of the total upon accepting the proposal, 15% after drywall installation, and the remaining 50% after full completion. *Id.*

According to Martinovski, when Odin accepted the proposal, it understood that Red Star would remove the damaged materials and debris. ECF No. 42-2 at PageID.349. But according to Odin, Red Star instead *demolished* four units, which it had not approved. ECF Nos. 42-23; 43-6. Red Star contends that it is "a misconception" that Red Star demolished the building. ECF No. 42-2 at PageID.350. But Red Star also states that it trusted its electrician to know that the demolition was the most efficient way to renovate the units and admits that it "demoed" the units in an e-mail exchange about the project. *Id.* at PageID.351–53.

Also that month, Odin invited Red Star to submit a proposal for work at Odin's property in Memphis, Tennessee: Bent Tree Apartments ("Bent Tree"). ECF No. 42-13. According to Red Star, Dodsworth told Martinovski over the phone that

---

[2] A copy of the proposal was provided in the record, ECF No. 42-9, but as explained below, it does not appear to be the approved contract itself because there are no signatures or other essential terms.

he would be reimbursed for his gas, lodging, and time to evaluate the site in Tennessee. ECF No. 42-2 at PageID.331, 375–76. Martinovski explained in his deposition that he usually received compensation for traveling to develop proposals for out-of-state projects. *Id.* at PageID.375. However, he also acknowledged that Odin did not reimburse his travel costs for two other out-of-state project proposals. ECF No. 43-2 at PageID.611.

After visiting Tennessee, Martinvoski sent Odin a $3,500 invoice for travel reimbursement, calculating his time based on his annual salary to determine a $72 hourly rate. *Id.* He also submitted a project proposal for Bent Tree, ECF No. 42-14, but later withdrew the proposal, ECF No. 42-15.

By May 2020, the relationship between the parties had begun to sour. *See* ECF No. 43-6. According to Red Star, Odin was not paying Red Star's invoices for various APP Contracts. *Id.* And in three instances,[3] Red Star alleges that AvidXChange "would advance Red Star money as satisfaction for some invoices. However, because Odin Properties would not pay [AvidXChange] for the invoices owed," AvidXChange successfully sued and recouped those amounts from Red Star. ECF No. 4 at PageID.57; ECF No. 42-2 at PageID.356.

---

[3] These invoices are 20-0002, 20-0005, and 20-0030. ECF No. 42 at PageID.285–87.

On approximately May 7, 2020, Red Star began to "disengage from Odin Properties" and cease work on APP Contracts pertaining to the apartments on Brace Street because Odin was not paying Red Star's invoices. ECF No. 42-2 at PageID.357–59. On June 3, 2020, Odin wrote a letter to Red Star terminating their professional relationship and contending that the only invoices Odin had not paid were invoices for projects that Red Star had not completed in a timely manner, or to proper quality standards. ECF Nos. 42-23; 43-6. As Martinovski explained: "I left the jobsite 30 days prior for nonpayment. For 30 days, [Dodsworth] kept heckling me to come back. I never came back because he didn't pay me. He fired me in June, but I left in May." ECF No. 42-2 at PageID.355. In 2022, Red Star ceased doing business altogether. *Id.* at PageID.313.

On September 6, 2024, Red Star sued Odin. ECF No. 1. Odin filed a counterclaim. ECF No. 12. After discovery closed, the parties filed the instant cross-motions for summary judgment. ECF Nos. 42; 43. Red Star argues that there is no dispute of material fact that Odin breached at least five APP Contracts and one verbal agreement by failing to pay 19 related invoices,[4] or, alternatively, Odin was unjustly

---

[4] In its amended complaint, Red Star originally alleged that Odin failed to pay 34 invoices. ECF No. 4-1. However, in its motion for summary judgment, Red Star alleged in its statement of facts that Odin failed to pay 20 invoices. ECF No. 42 at PageID.285–91. And in its analysis, Red Star only includes 19 invoices. *Id.* at PageID.295–99. The invoice absent from the analysis or subsequent papers is invoice 20-0029 for $1,215.00, submitted on April 7, 2020 for a bathroom window

enriched by Red Star's performance without compensation. ECF No. 42. Odin argues that Red Star substantially breached first by not performing properly, cannot establish damages by showing which invoices were paid or unpaid, and cannot seek equitable relief because the parties do not dispute that they had a contractual relationship. ECF No. 43. Each party has responded, ECF Nos. 44; 45, and replied, ECF Nos. 46; 48.

## II. LEGAL STANDARD

To prevail on summary judgment, a movant must identify record evidence showing that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, then the burden shifts to the nonmovant to identify specific facts that create "a genuine issue for trial," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted), which requires more than a mere "scintilla of evidence," *id.* at 252, and more than "metaphysical doubt," *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). All inferences must be reasonable, logical, and drawn in the nonmovant's favor to determine whether any party must prevail as a matter of law. *See Anderson*, 477 U.S.

---

installation at Cornerstone. *Id.* at PageID.288. As explained below, there is a dispute of fact regarding the breach of contract claims. Thus, this Court will not decide whether this invoice is part of the sought damages and leaves this to the jury to determine whether and to what extent damages are owed.

at 251–52. Summary judgment will be granted if the nonmovant fails to establish a genuine issue of material fact on the elements of its case that the moving party has challenged. *See Celotex Corp.*, 477 U.S. at 322. But summary judgment will be denied if the challenged elements have "genuine factual issues that . . . may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted).

## III. DISCUSSION

### A. Breach of Contract

Red Star and Odin each assert a breach of contract claim relating to the unpaid invoices. Red Star argues that Odin was the first to substantially breach by failing to pay several disputed project invoices. Odin argues that Red Star was the first to substantially breach by not performing its work in a timely way or to proper standards. Odin also argues that Red Star cannot establish damages because during discovery, Martinovski failed to provide adequate accountings of which invoices were allegedly unpaid.

To succeed on a breach of contract claim, the claimant must establish "(1) the existence of a contract; (2) a breach of that contract; and (3) damages suffered by the nonbreaching party as a result of the breach." *Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018) (citing Michigan caselaw). Under Michigan law, the party "who commits the first substantial breach of a contract cannot maintain an

action against the other contracting party for failure to perform." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 639 (6th Cir. 2018) (citation modified).

### *1. Existence of a Contract*

As a preliminary matter, this Court must first determine whether a contract existed. To the extent Red Star contends that "[e]ach invoice that RedStar submitted to Odin constituted a separate and enforceable contract," ECF No. 42 at PageID.295, this statement misconstrues the contracts at issue. The record shows that the invoices were simply a payment mechanism for work done for Approved Project Proposals, *i.e.*, the APP Contracts. *See* ECF No. 42-2 at PageID.327–29, 338–39 (describing the parties' process for contract-formation); *see also Mining Mach., Inc. v. Copley*, 145 F. App'x 149, 153–55 (6th Cir. 2005) (noting that there was evidence of a contractual relationship but that submitting invoices was not such evidence because "the fact that [the subcontractor] expected to submit its invoice directly to [the plaintiff] in this instance does not create a reasonable inference that a contract was created" especially where the subcontractor was directed to submit invoices). Therefore, this Court finds the invoices to be evidence of the parties' contractual relationship but not as the contracts themselves. Instead, the Approved Project Proposals are the contracts at issue.

Indeed, as the record shows, the parties do not dispute that the Approved Project Proposals were valid, express contracts for the construction projects. *See*

- 9 -

ECF No. 42 at PageID.283–84, 294–99; ECF No. 43 at PageID.524–27. Instead, they simply dispute who breached the APP Contracts first and whether Red Star has established its damages.

However, neither party has specified which APP contracts were allegedly breached. Upon review of the record, there are copies of five proposals that appear to have formed the bases for disputed APP contracts. These include Proposal ODL-2020-001 "Installation of LED Wallpacks on PhotoCell throughout the entire property" at Cornerstone, ECF No. 42-5; Proposal ODL-2020-002 "Removal and replacement of fence" at Cornerstone, ECF No. 42-6; Proposal ODL-2020-004 "Fence Realignment& Correction" at Cornerstone, ECF No. 42-8; and Proposal ODL-2020-006 "Interior renovation of burnt out units" at Brace. ECF No. 42-9. The record is not clear how many other contracts are involved for the remaining disputed invoices regarding porch work at Cornerstone, painting work at Windcrest, and camera box installation at Mayfair, but these distinct projects suggest there are at least three more disputed APP contracts. *See* ECF No. 4-1 at PageID.79–80, 89–91, 93–97; *see also* ECF Nos. 42-10; 42-11.

Astoundingly, neither party provided evidence of the APP Contracts themselves. Red Star produced proposals for some projects to which some invoices pertained, but it did not produce all proposals. ECF Nos. 42-5; 42-6; 42-9; 42-14. Furthermore, the proposals were not necessarily the finalized APP Contracts. As

Martinovski explained in his deposition, after he submitted proposals to Odin, Odin would sometimes revise the proposals through e-mail before approving and awarding contracts. ECF No. 42-2 at PageID.336–37. It is unclear whether the proposals Red Star produced are the approved versions, but based on the absence of essential terms in many of them, it is likely these are not the APP Contracts.

Accordingly, there is a genuine question of material fact as to which APP Contracts are in dispute.

### 2. Breach

In the same way that there are genuine issues of material fact in dispute about which APP Contracts are the subject of this case, there are questions of fact as to whether, or in what order, either party breached the APP Contracts.

Red Star alleges that Odin breached by not paying invoices within the agreed upon timeframe. *See* ECF No. 42-22. As Martinovksi's e-mail to Pudles on June 2, 2020 shows, Martinovski sought payment for seven outstanding invoices[5] that were 27 to 80 days overdue. *Id.* (stating that "[t]he covenant [Odin] made with Red Star Construction was payment no later than five (5) days from acceptance of invoice …. Odin has since acted in bad faith by not fulfilling its contractual obligations."); *see also* ECF No. 4-1 (stating the invoices were due upon receipt). This evidence is

---

[5] These invoices were 20-002(A), 20-2001, 20-0032, 20-2002, 20-0034, 20-0037(A), and 20-0028(A). ECF No. 42-22.

consistent with Martinovski's testimony that Odin did not pay owed invoices on time. *See* ECF No. 42-2 at PageID.347, 355.

On the other hand, Odin points to evidence supporting its argument that the only invoices it did not pay were invoices for APP Contracts where Red Star did not perform in conformity with the contract terms, such as agreed-to timelines, methods, or standards. *See* ECF Nos. 43-5; 43-6; 45-5. For example, in a June 3, 2020 e-mail exchange, Odin's director, Dodsworth, inquired why Red Star had not completed electric and plumbing work yet, stating that Red Star was past its agreed-upon completion deadline. ECF No. 43-6 at PageID.722 ("If you say that I have been your 'biggest obstacle' because I have been holding you to a timeline and not paying you for work you have not completed, then thank you for letting me know I am doing my job .... I will not approve payment for jobs that are not complete or jobs that are not done correctly.").

However, without evidence of the terms of the APP Contracts that formed the basis of the invoices in dispute, this Court cannot determine whether Odin's failure to pay certain invoices was after Red Star had already breached certain terms as Odin alleges. Thus, there is a dispute of fact regarding who breached which APP Contracts.

The dispute over the Brace Apartments renovation best highlights the question of fact. In the proposal for the project, ODL-2020-006, the proposal is framed as a

- 12 -

bid for "[i]nterior renovation of burnt out units" at the Brace Street address. ECF No. 42-9 at PageID.420. The proposal includes an estimated costs of $61,750.00 for "[t]he work listed in Attachment A" and $18,750.00 for rehabilitating "the other units up to rental readiness at this address." *Id.* The terms of the proposal include a 35% deposit "of the total upon acceptance of the receipt," 15% after "completion of drywall installation," and the remaining 50% after the project was fully completed. *Id.* In the attachment, Red Star lists 27 tasks involved in completing the project, including removing "loose debris." *Id.* at PageID.421. As for a timeline, Red Star proposed that the "[t]imeline and schedule will be mutually agreed upon in advance between Owner and Contractor." *Id.*

The record does not contain a writing with an agreed-upon timeline. But in an e-mail exchange between Dodsworth and Martinovski, both parties discuss May 18, 2020 as an end date for the "rough work" in accordance with their timeline. ECF No. 43-5 at PageID.706. Later, Dodsworth wrote that Red Star missed its agreed-upon timeline and removed Red Star from the job for failure to complete the work correctly and in a timely manner. ECF No. 43-6 at PageID.723. The record contains more evidence of a dispute over the terms of the contract regarding whether Red Star performed appropriately. Specifically, the attachment to the proposal lists debris removal as part of the included work, but later, the parties disagreed about whether

- 13 -

this removal was actually a demolition, and if so, whether that was appropriate. *See id.*; *see also* ECF No. 42-2 at PageID.352–55, 362–64.

Furthermore, the parties dispute whether Odin paid the 35% deposit as agreed. Odin provides evidence that it did pay the deposit and demanded Red Star return it after not completing the work correctly and timely. ECF No. 43-6 at PageID.723. But according to Martinovski, Red Star did not receive the deposit when it was supposed to, and when it eventually did, AvidXChange rescinded the payment because Odin did not reimburse AvidXChange. ECF No. 42-2 at PageID.347, 355–57.

Without a copy of the APP contract(s) for Brace Street, this Court cannot determine as a matter of law which party breached which APP Contract(s) encompassing the disputed invoices. Such a decision will necessarily involve resolving factual questions, such as what the terms of the APP Contracts were, and what were the events that occurred leading up to alleged breaches. *Hancock*, 958 F.2d at 1374. Therefore, there are several questions of fact in dispute regarding breach.

### 3. Damages

Because there is a question of fact relating to breach, the question of damages must also go to a jury to determine. Accordingly, this Court need not address the evidentiary issue on damages raised in Odin's response nor in its improperly

embedded motion to strike at this time.[6] *See* E.D. Mich. LR 5.1(e); 7.1(i). To the extent that the Parties are attempting to introduce evidence that was not disclosed during discovery, this issue must be handled prior to trial through procedurally proper motions. *See id.*

---

[6] In its response to Red Star's motion for summary judgment, Odin included a request to strike Martinovski's affidavit because the affidavit was inconsistent with his earlier deposition and was not provided during discovery. ECF No. 45 at PageID.903–05. Red Star responded that Odin could not embed a motion to strike in its response, pursuant to Local Rule 7.1(i). ECF Nos; 47; 46 at PageID.1082–83. It added that if Martinovski's affidavit had to be stricken for the reason Odin alleged, then Odin's affidavit from Odin's manager, Philip Balderston, ECF No. 45-4— which was attached to Odin's response to Red Star's motion for summary judgment—must also be stricken. ECF No. 47 at PageID.1101–02.

In its reply, Odin argued that its request to strike Martinovski's affidavit did not violate the local rules because "it was bring[ing] to the Court's attention Plaintiff's use of evidence and a[n] affidavit that was requested and not produced throughout the litigation. The Local Rules allow for room for the Court to consider the request." ECF No. 49 at PageID.1143. Odin added that Balderston's affidavit is distinguishable from Martinovski's affidavit because Balderston's "affidavit and accompanying ledger were responsive to Red Star's new claims regarding unpaid invoices," whereas "Odin's affidavit was submitted to rebut the new information improperly introduced by Plaintiff Red Star." *Id.* at PageID.1146.

The Local Rules are clear: "Motions must not be combined with any other stand-alone document." E.D. Mich. LR 5.1(e). Local Rule 7.1(i) reiterates this prohibition, elaborating, for example, that "a counter-motion must not be combined with a response or reply." Accordingly, "[p]apers filed in violation of this rule will be stricken." E.D. Mich. LR 7.1(i). Thus, Odin and Red Star both must move accordingly to strike these affidavits. *See id.*; *see also Miller v. Delta Air Lines, Inc.*, 745 F. Supp. 3d 543, 551 (E.D. Mich. 2024) (instructing the plaintiff to file a separate motion because his request for leave to amend his pleading was improperly included in his response to the defendant's motion to dismiss).

For these reasons, summary judgment for both Odin and Red Star will be denied on the breach of contract claims.

## B. Unjust Enrichment and Quantum Meruit

In the alternative to its breach of contract claims, Red Star argues it is entitled to compensation under theories of unjust enrichment and quantum meruit if there is a question whether the invoices represented contractual obligations. ECF No. 42 at PageID.300.

Under Michigan law, if an express contract is absent, a contract may be implied in law for the purpose of "enable[ing] justice to be accomplished even in case no contract was intended." *Daimler-Chrysler Servs. N. Am. v. Summit Nat'l*, 289 F. App'x 916, 925 (6th Cir. 2008) (citation modified). If the defendant receives a benefit from the plaintiff and retaining the benefit is inequitable, a contract may be implied in law to require reasonable compensation. *Bloomer v. Word Network Operating Co.*, 785 F. Supp. 3d 251, 272 (E.D. Mich. 2025). "Once a contract is implied-in-law, courts applying Michigan law … have used both the phrase 'quantum meruit' and 'unjust enrichment' to describe the theory of recovery." *Id.*

Quantum meruit is an equitable doctrine that "requires a defendant to pay a plaintiff the reasonable value of services performed for the defendant even though there was no contract to do so. The theory underlying *quantum meruit* is that the law implies a contract when one person benefits from another person's act." *United*

*States v. Snider*, 779 F.2d 1151, 1159 (6th Cir. 1985). Likewise, "[u]njust enrichment is an equitable doctrine by which the law sometimes indulges in the fiction of a quasi or constructive contract, with an implied obligation to pay for benefits received to ensure that exact justice is obtained." *Crestmark Bank v. Electrolux Home Prods., Inc.*, 155 F. Supp. 3d 723, 748 (E.D. Mich. 2016) (internal quotation marks and citations omitted). Generally, courts will not apply these equitable doctrines "when an express contract already addresses the pertinent subject matter." *Id.* (internal quotation marks and citations omitted).

A plaintiff also may seek equitable relief as the alternative to a breach of express contract claim if the defendant has disputed, or not yet foreclosed disputing, the existence of the contract. *See* Fed. R. Civ. P. 8(a)(3); *see also Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 796–97 (6th Cir. 2016). But when there is no dispute that an express contract exists and governs the disputed subject matter, a claim in equity may not stand. *See Uselmann v. Pop*, 495 F. Supp. 3d 528, 540 (E.D. Mich. 2020); *see also In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 406 F. Supp. 3d 618, 635 (E.D. Mich. 2019).

As discussed previously, the Parties do not dispute that there were express APP Contracts between the parties. *See* ECF No. 42 at PageID.283–84, 294–99; ECF No. 43 at PageID.524–27. In fact, Odin plainly stated: "Odin does not dispute it was a party to a contractual relationship with Red Star." ECF No. 43 at PageID.524.

Because there is no dispute, Red Star's argument that a jury could find there was no express contract is without merit. *But see Bloomer*, 785 F. Supp. 3d at 272–73 (denying summary judgment on the equitable relief claims because the jury could find that there was no contract). Accordingly, Red Star cannot seek equitable relief for invoices pertaining to APP Contracts. *See Uselmann*, 495 F. Supp. 3d at 540.

And even if this Court were to agree with Red Star's claims that "[e]ach invoice that RedStar submitted to Odin constituted a separate and enforceable contract," ECF No. 42 at PageID.295, (which as discussed above, it does not) this would establish an express contract, and Red Star would still be barred from seeking equitable relief. Therefore, summary judgment will be granted in Odin's favor on Red Star's claims for equitable relief.

### C. Travel Reimbursement

Red Star also alleges a breach of oral contract claim, or alternatively, seeks equitable relief, based on Odin's failure to reimburse Martinovski for his travel expenses to visit the potential project site, Bent Tree, in Tennessee. Summary judgment will be granted in Odin's favor on this claim because there is no objective evidence of an agreement to compensate Red Star for travel to Tennessee, nor did Odin receive a benefit that would otherwise imply an obligation to pay for the travel.

"Under Michigan law, contracts arise when (1) competent parties bargain over (2) a proper subject matter, so long as (3) consideration, (4) mutuality of agreement,

and (5) mutuality of obligation support the deal they strike." *Stackpole Int'l Eng'r Prod. Ltd. v. Angstrom Auto. Grp., LLC*, 52 F.4th 274, 279 (6th Cir. 2022) (internal quotation marks and citation omitted). "Mutuality of agreement requires an offer and an acceptance." *Bloomer*, 785 F. Supp. 3d at 265. Additionally, for all essential terms there must be a meeting of the minds, the determination of which is a question of fact. *Id.* "A meeting of the minds is judged by an objective standard, looking to the expressed words of the parties and their visible acts, not their subjective states of mind." *Id.* (internal quotation marks and citation omitted).

In the absence of objective evidence, evidence of a defendant's subjective mental state is insufficient to show there was a meeting of the minds. *Id.* at 265–67. For example, in *Bloomer*, the plaintiffs claimed that the defendants owed them commissions for selling some of the defendants' products, but the defendants argued there was no meeting of the minds because the plaintiffs failed to identify the agreement's relevant dates and failed to show how the commissions would be calculated or paid. *Id.* The court found that the plaintiffs demonstrated that they had a subjective belief that they had an agreement, "[b]ut there is no visible act to support [the defendants'] objective agreement to the essential terms of a contract." *Id.* These facts are analogous to the case at hand.

Here, evidence in the record demonstrates Martinovski's subjective state of mind that he believed they agreed to travel reimbursement. Indeed, Martinovski

asserted in his deposition that he had a verbal contract with Odin for travel compensation, which he usually receives to provide proposals for out-of-state projects. ECF No. 43-2 at PageID.608–09. He stated that Dodsworth told him over the phone that he would be compensated for his gas, time, and lodging. *Id.* at PageID.609–10. Martinovski also produced a copy of an invoice he sent to Odin from April 28, 2020 for $3,500.00 in travel costs, ECF No. 4-3 at PageID.63, and he explained that he calculated the cost for his time by dividing his salary to determine an hourly rate of $72, ECF No. 43-2 at PageID.609–10.

But there is no evidence to support the assertion that Odin objectively agreed to pay Martinovski's travel reimbursement. Indeed, Odin argues it never made such an agreement. And like the defendant in *Bloomer*, Odin never paid any of Martinovski's travel costs. Nor is there evidence that Odin ever directed Martinovski to track his travel costs so that he could be reimbursed. In fact, the invoice does not include an itemization of the costs, any accompanying receipts for gas and lodging, nor any corroborating writings to flesh out the essential terms. *See* ECF No. 4-1 at PageID.63. Moreover, when asked whether there was an agreement to compensate him for his meals and, if so, why he did not include it in the invoice, Martinovski admitted "I'm sure there was [an agreement to compensate for meals]. Maybe I just did it as gratis." ECF No. 43-2 at PageID.611. He also acknowledged that Odin did not reimburse his travel costs for two other out-of-state project proposals. *Id.*

- 20 -

In sum, there is only evidence that Martinovski *subjectively believed* Odin would reimburse him for travel. But there no objective evidence of a meeting of the minds on essential terms to find an oral travel-reimbursement agreement. *Cf. Bloomer*, 785 F. Supp. 3d at 265. Thus, there is no material fact in dispute as to whether the parties had a contract to reimburse Red Star for travel to Tennessee.

Moreover, any claim in equity would also fail because Red Star fails to provide evidence that Odin benefitted from Martinvoski's travel. As Odin notes, the evidence shows that "Red Star traveled to Memphis, Tennessee, for the opportunity for additional work with Odin Properties." ECF No. 45 at PageID.911. Furthermore, Red Star withdrew its Bent Tree proposal, so Odin did not receive a benefit that would otherwise imply an obligation to pay for the travel. *See* ECF No. 42-15. Indeed, Red Star did not receive money for travel relating to any of the other out-of-state projects. ECF No. 43-2 at PageID.611. Thus, this Court will grant summary judgment in favor of Odin on the travel reimbursement claim.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Plaintiff Red Star's motion for summary judgment, ECF No. 42, is **DENIED**.

Further, it is **ORDERED** that Defendant Odin Properties' motion for summary judgment, ECF No. 43, is **GRANTED IN PART** to the extent that Red Star's following claims are **DISMISSED WITH PREJUDICE:**

- Count I – Breach of Contract for the travel reimbursement;

- Count II – Unjust Enrichment; and

- Count III – Quantum Meruit.

Defendant Odin Properties' motion for summary judgment, ECF No. 43, is **DENIED IN PART** to the extent that Red Star's breach of contract claim (Count I) shall proceed.

      **IT IS SO ORDERED.**

      **This is not a final order and does not close the above-captioned case**.

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: November 6, 2025